UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIJON KINNEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>P.D. BRAZELTON, et al.,<br><br>　　　　　Defendants. | Case No. 1:14-cv-00503-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO:**<br><br>**(1) DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 37); AND**<br><br>**(2) GRANT DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SURREPLY(ECF No. 47)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE**<br><br>**CLERK TO TERMINATE ECF No. 39** |

**I.　Procedural History**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The action proceeds against Defendant Flores on Plaintiff's Eighth Amendment claims for inadequate medical care and cruel and unusual punishment.

Before the Court is Defendant's October 2, 2015 motion for summary judgment. (ECF No. 37.) In response, Plaintiff filed a "Motion/Request for Defendant's Motion for Summary Judgment be Denied," which the Court construes as Plaintiff's opposition.[1] (ECF No. 39.) Defendant filed a reply. (ECF No. 42.) Plaintiff filed an unauthorized

---

[1] Because the Court construes this filing as Plaintiff's opposition, the Court will direct the clerk to terminate ECF No. 39's status as a pending motion.

surreply. (ECF No. 44.) He also filed "objections" to the motion for summary judgment with additional exhibits. (ECF No. 45.) Defendant moved to strike both filings. (ECF No. 47.) Plaintiff objected to the motion to strike. (ECF No. 50.) Defendant filed no reply. These matters are submitted pursuant to Local Rule 230(*l*).

For the reasons set forth below, the Court will recommend that Defendant's motion to strike be granted. The Court will also recommend that the motion for summary judgment be denied.

**II.     Preliminary Matters**

   **A.     Motion to Strike**

Absent leave of court, no briefing on Defendant's motions is permitted beyond the opposition and reply. The Court did not grant Plaintiff leave to file a surreply or additional objections to the motion for summary judgment and does not desire any further briefing on the motion. The surreply and objections have not been considered in these findings and recommendations.

Accordingly, Defendant's motion to strike Plaintiff's surreply and objections should be granted, and Plaintiff's surreply (ECF No. 44) and objections (ECF No. 45) should be stricken from the record.

   **B.     Pending Discovery Dispute**

Discovery in this action closed on July 7, 2015. (ECF No. 20.) Nevertheless, several disputes regarding discovery remain pending. (See ECF Nos. 56, 61, 62.) Plaintiff has opposed the summary judgment motion. (ECF No. 39.) He has not specifically asked the Court to stay proceedings on the motion for summary judgment. In any event, the Court sees no basis to delay consideration of the motion and will proceed to consider it on the merits.

   **C.     Plaintiff's Non-Compliance with Rules**

Defendant objects to Plaintiff's technical non-compliance with Federal Rule of Civil Procedure 56(c)(1)(A) and Local Rule 260 in opposing Defendant's motion for summary judgment. (ECF No. 42.)

2

As a pro se litigant, Plaintiff's filings are entitled to liberal construction. See Solis v. Cnty. of Los Angeles, 514 F.3d 946, 956 n.12 (9th Cir.2008). Plaintiff filed an opposition that contains a statement of facts, much of which is based on Plaintiff's personal knowledge. (ECF No. 39.) The Court also may rely on Plaintiff's verified complaint. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

In such circumstances, Plaintiff's technical non-compliance with the rules is insufficient basis to grant Defendant's motion for summary judgment.

**D.     Defendant's Objections to Plaintiff's Evidence**

Defendant objects to certain evidence offered by Plaintiff in support of his opposition. (ECF No. 42-1.) The Court has not considered any of the objected-to evidence as a basis for denying this motion for summary judgment and therefore does not address Defendant's objections.

**III.    Motion for Summary Judgment**

    **A.     Legal Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1).

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).

**B.    Factual Background**

Based on the submissions of the parties, the Court finds the following facts to be undisputed unless otherwise indicated.

At all times relevant to Plaintiff's complaint, he was housed in Facility C at Pleasant Valley State Prison ("PVSP"). On August 14, 2012, a riot erupted on the Facility C recreation yard involving twenty-nine Southern Hispanic and three Northern Hispanic inmates. An order was issued over the Facility C's public address (PA) system commanding all of the approximately 300 inmates on the yard to "get down." At the time of the riot, a light on the Facility C recreation yard was flashing to indicate an excessive heat alert because the outside temperature had reached at least 90 degrees.

Most inmates complied with the initial order to get down, including Plaintiff. The Southern Hispanic inmates continued their assault on the three Northern Hispanic inmates. Moments later, the combatants complied with the orders to get down, but the Southern Hispanic attackers ran from the incident site, some through the basketball court area, and assumed prone positions in different areas of the yard; some "proned out" near the basketball court area.

4

Correctional Officers formed a skirmish line and advanced towards the Northern Hispanic victims. It was immediately determined that the three Northern Hispanic inmates all sustained injuries, and at least two inmates had serious injuries that were consistent with wounds made with slashing weapons; one later died from his injuries.

At some point, all inmates were further ordered to assume a prone position, i.e. to lay flat facing the ground. All inmates complied with the secondary orders to assume a prone position, except Plaintiff and the sixteen other African American inmates who were located on the recreation yard's basketball court, approximately twenty yards from where the attacked occurred. Plaintiff claims that he "proned out" but immediately felt a burning sensation and jerked upward onto his hands. He told an unidentified officer that the ground was burning him. He sat down.  The unidentified officer did not tell him to do otherwise. According to Plaintiff, he and other inmates on the basketball court remained seated for approximately two hours while the crime scene was processed and other inmates were systematically removed from the yard.

Prison officials decided to treat the group of seventeen African American inmates, including Plaintiff, as a safety and security threat and removed them last from the yard. Once the other inmates were removed from the yard, approximately 15-20 Correctional Officers, including Defendant Flores, formed an L-shaped skirmish line to converge on the group of seventeen African-American inmates.

When the skirmish line was within approximately ten to fifteen feet of the African-American inmates, Defendant Flores instructed the inmates to prone out and then to crawl backwards on their hands and knees. Plaintiff was the closest to the skirmish line and was ordered to crawl backwards first.

The parties' versions of the events that followed differ.

### 1.     Plaintiff's Version

According to Plaintiff, Plaintiff began crawling on his hands and knees but the heat of the ground burned his skin and caused him to jump up. He informed Flores that the ground was too hot and was burning him. Flores and another officer threatened to

5

1 shoot Plaintiff with a block gun if Plaintiff did not comply with the order to crawl. Plaintiff 2 turned around, placed his hands behind his back, and was handcuffed. Defendant 3 Flores stated, "Do you think you're a fucking tough guy? Then I got something for you." 4 Defendant also directed other disparaging remarks and racial slurs at Plaintiff.

5 Defendant escorted Plaintiff to Building 4 where he ordered Plaintiff onto his 6 knees on the hot pavement. Defendant instructed an unidentified Correctional Officer to 7 shoot Plaintiff if he moved. Plaintiff remained on his knees for an additional ninety 8 minutes. Plaintiff then was uncuffed and strip searched. Once Plaintiff was uncuffed, he 9 told Flores and another, unidentified officer that his knees had been burned and 10 required medical attention. Flores refused and instead required Plaintiff to pick up trash 11 on the yard.

12       **2.    Defendant's Version**

13 According to Defendant, Plaintiff initially began crawling backwards on his hands 14 and feet in a "bear crawl" manner, but jumped up and faced forward towards the 15 skirmish line. Multiple verbal commands were directed at Plaintiff ordering him to turn 16 around. Plaintiff did not initially comply with these orders. As Defendant advanced on 17 Plaintiff, Plaintiff finally complied and turned around. Defendant Flores reached for 18 Plaintiff, placed him in flex-cuff restraints, and escorted him across the yard, 19 approximately 25-35 yards, to Building 4, where another Correctional Officer was 20 stationed. Plaintiff was extremely argumentative during his escort to Building 4. 21 Defendant denies directing disparaging remarks or racial slurs at Plaintiff during the 22 escort.

23 Based on Plaintiff's non-compliance with the prone out orders, non-compliance 24 with orders to crawl backwards toward the skirmish line, his jumping up and moving in a 25 forward motion towards the skirmish line, and his ongoing argumentative behavior, 26 Officer Flores ordered Plaintiff to "get down" once they reached Building 4. Plaintiff 27 complied with this order by assuming a kneeling position. Defendant then left Plaintiff 28 with the Correctional Officer stationed in front of Building 4 and returned to the skirmish

6

1 line to assist in removing the remaining non-compliant group of inmates. Officer Flores
2 did not threaten to shoot Plaintiff or direct the Correctional Officer to shoot Plaintiff if he
3 moved.

4       After the seventeen inmates were removed from the basketball court, restrained,
5 and escorted to the front of Building 4, they were systematically subjected to unclothed
6 body searches and then returned to their housing units without further incident. This
7 entire process took approximately thirty minutes. Defendant did not participate in cutting
8 the flexcuffs off these inmates before their unclothed body searches, nor did he perform
9 any of the unclothed body searches. Defendant had no further interaction with Plaintiff
10 after placing him in restraints, escorting him to Building 4, and ordering him to get down
11 once there. Plaintiff did not ask Defendant if he could receive medical attention for any
12 reason.

13       **3.**    **Plaintiff's injuries**

14       Immediately following the incident, Plaintiff's knees were discolored and blisters
15 were "barely appearing." Plaintiff requested a medical request form upon returning to his
16 housing unit, but was told no such forms were available. The day following the riot,
17 Plaintiff did not request medical attention because his knees were numb and the blisters
18 were still small. At that time, Plaintiff's housing unit was on lockdown due to the riot.
19 Two days after the riot, the lockdown was released and Plaintiff walked to the medical
20 clinic. Plaintiff turned in a medical request form and was seen the following day. Plaintiff
21 received triple antibiotic cream for blisters on his knees. He indicated his pain was a six
22 out of ten. He eventually was seen again on August 22, 2012, was given antibiotics and
23 pain medication, and was scheduled for daily cleaning of his wounds.

24    **C.**    **Discussion**

25       **1.**    **Medical Indifference**

26     Deliberate indifference to serious medical needs violates the Eighth
27 Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble,
28 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),

1  overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th
2  Cir. 1997) (en banc). A determination of "deliberate indifference" involves an
3  examination of two elements: the seriousness of the prisoner's medical need, and the
4  nature of the defendant's response to that need. McGuckin, 974 F.2d at 1059. A serious
5  medical need exists if the failure to treat a prisoner's condition could result in further
6  significant injury or the unnecessary and wanton infliction of pain. Id. The existence of
7  an injury that a reasonable doctor or patient would find important and worthy of
8  comment or treatment, the presence of a medical condition that significantly affects an
9  individual's daily activities, or the existence of chronic and substantial pain are examples
10 of indications that a prisoner has a serious need for medical treatment. Id. at 1059-60.

11     A prison official is deliberately indifferent if he knows that a prisoner faces a
12 substantial risk of serious harm and disregards that risk by failing to take reasonable
13 steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must
14 not only "be aware of facts from which the inference could be drawn that a substantial
15 risk of serious harm exists," but he "must also draw the inference." Id. In order for
16 deliberate indifference to be established, therefore, there must be a purposeful act or
17 failure to act on the part of the defendant and resulting harm. McGuckin, 974 F.2d at
18 1060. Deliberate indifference may be shown when prison officials deny, delay or
19 intentionally interfere with medical treatment, or it may be shown in the way in which
20 they provide medical care. Id. at 1062. A claim of medical malpractice or negligence is
21 insufficient to make out a violation of the Eighth Amendment. Id. at 1059; Toguchi v.
22 Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

23     Issues of material fact preclude summary judgment on this claim. Defendant
24 Flores states that he had no further contact with Plaintiff after delivering Plaintiff to
25 Building 4. Plaintiff, on the other hand, states that he asked Defendant Flores for
26 medical attention after kneeling for ninety minutes on the pavement in front of Building
27 4. Plaintiff states that, at that time, his knees were discolored and began to blister.
28 Under Plaintiff's version of the facts, Defendant Flores was aware that Plaintiff had been

kneeling on hot pavement for ninety minutes. He requested medical attention, and Flores denied it. A reasonable juror could find such evidence to be credible and sufficient to support a finding that Flores was deliberately indifferent to Plaintiff's medical need.

Defendant argues, nevertheless, that Plaintiff did not have a serious medical need immediately following the riot. This argument is unavailing. According to Plaintiff, he suffered burns to his knees that had already begun to blister at the time he requested medical attention from Defendant. A reasonable juror could conclude that such injuries constitute a serious medical need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (a "serious medical need" may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'"); McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."). Defendant makes much of Plaintiff's failure to seek medical attention on the second day of the lockdown following the riot. However, Plaintiff asked for a medical request form immediately upon returning to his housing unit, and later walked to the medial clinic at his first opportunity. Plaintiff's failure to seek medical attention on the second day of the lockdown goes to the weight of his claims and may impact the jury's evaluation of the credibility of them, but it does not rule out a finding that the claims are valid and thus does not provide sufficient basis for granting summary judgment.

Defendant's motion for summary judgment on this claim should be denied.

### 2. Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th

Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. Farmer, 511 U.S. at 847. As stated above, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994).

### a.    Objective Risk of Serious Harm

Defendant first argues that under the circumstances he responded reasonably to Plaintiff's non-compliance with the initial prone out order, and, as such, Plaintiff cannot show that he was subjected to an objectively serious risk of harm to his health or safety. This argument is unpersuasive. The question of whether Defendant Flores's conduct was justified by security concerns may impact the subjective component of the conditions of confinement claim and/or the qualified immunity inquiry, but it is irrelevant to evaluation of the extent of the risk to which Plaintiff was subjected.

Defendant next appears to argue that Plaintiff did not face a serious risk of harm from being forced to kneel on hot pavement because all inmates other than those on the basketball court were subjected to and complied with the prone out order. According to Plaintiff, however, the compliant inmates were on grass or dirt, rather than pavement.

Defendant does not state otherwise. Thus, the conduct of other inmates is not indicative of whether Plaintiff faced a risk of serious harm.

Plaintiff was allegedly forced to kneel for ninety minutes on pavement that was hot enough to cause blistering that endured for over two weeks. The Court finds these facts sufficient for a reasonable juror to conclude that Plaintiff faced an objectively serious risk of harm.

### b.    Subjective Deliberate Indifference

Defendant next argues that his conduct does not reflect subjective deliberate indifference but instead a reasoned response to a critical and dangerous situation within the institution. Defendant points out that Plaintiff was one of a group of inmates who refused to prone out and who were located in an area where weapons were used by inmates to attack other inmates. Additionally, the perpetrators of the attack retreated through the basketball court area where Plaintiff was located and could have discarded weapons there. Defendant contends that his actions were "entirely focused" on alleviating the security threat he believed Plaintiff presented.

Defendants' argument necessarily relies on his own version of the facts, which differs from Plaintiff's.

According to Defendant, he was one of many officers responding to a security threat. Plaintiff was non-compliant and argumentative. Defendant merely ordered Plaintiff to his knees until he could be searched for contraband. He had no further contact with Plaintiff and was not motivated by malice.

In contrast, Plaintiff claims that he immediately informed Defendant that the ground was too hot to crawl on and was burning him. Under this version of the facts, Defendant was aware of the state of the pavement and the effect it might have on Plaintiff. Defendant stated to Plaintiff, "Do you think you're a fucking tough guy? Then I got something for you." He then restrained Plaintiff, escorted him 25-35 yards away from the area of immediate security concern (i.e. the basketball court area), ordered

Plaintiff to kneel on the pavement, and threatened to shoot him or have him shot if he moved. These facts are sufficient to support a finding of deliberate indifference.

In this regard, the instant case is distinguishable from the case relied on by Defendant, Maldonado v. Youngblood, 1:12–cv–01157–JLT (PC), 2013 WL 322089 (E.D. Cal. Jan. 28, 2013). Maldonado is an unpublished screening order. There, the Court dismissed the plaintiff's bare allegation that he was "left unattended in a transportation vehicle" for more than three hours as insufficient to state a claim. There were no facts to suggest that either of the attending officers knowingly disregarded the risk to plaintiff's health or safety. Indeed, the allegation was equally susceptible to a finding of negligence. However, the plaintiff was given leave to amend in the event he could allege facts to suggest the defendants' knowledge of the risk he faced. Here, Plaintiff already has alleged such facts by stating that he informed Defendant that the ground was too hot to crawl on and was burning him.

Based on the foregoing, the Court concludes that disputes of fact preclude summary judgment in Defendant's favor.

### c.    Qualified Immunity[2]

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). It determines if the facts viewed in the light most favorable to Plaintiff state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200.

---

[2] Defendant argues that he is entitled to qualified immunity on Plaintiff's conditions of confinement claim. He does not present such argument regarding Plaintiff's inadequate medical care claim.

12

The district court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir. 2009)). In deciding whether officials are entitled to qualified immunity, the court is to view the evidence in the light most favorable to the plaintiff and resolve all material disputes in the favor of the plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendants cannot be held liable for a violation of a right that is not clearly established at the time the violation occurred. Brown v. Oregon Dep't of Corrections, 751 F.3d 983, 990 (9th Cir. 2014). A constitutional right is clearly established when its contours are "sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). The court is to look to the state of the law at the time the defendants acted to see if it gave fair warning that the alleged conduct was unconstitutional. Hope, 536 U.S. at 741. The unlawfulness of the official's act must be apparent in light of the preexisting law. Id, at 739. The Supreme Court has emphasized that it is often difficult for an official to determine how relevant legal doctrine will apply to the specific situation that is faced and that is why qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law[.]" Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).

Qualified immunity shields an official from personal liability where he reasonably believes that his conduct complies with the law. Pearson, 555 U.S. at 244. "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" Stanton v. Sims, 134 S. Ct. 3, 5 (2013) (citations omitted). In determining whether the defendant is entitled to qualified immunity, the court is to determine if "a

reasonable officer would have had fair notice that [the action] was unlawful, and that any mistake to the contrary would have been unreasonable." Chappell v. Mandeville, 706 F.3d 1052, 1056-57 (9th Cir. 2013) (quoting Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1060-61 (9th Cir. 2003)).

Because the Court already has determined there are sufficient facts upon which a jury could conclude that Defendant violated Plaintiff's constitutional rights, the Court considers only the second prong of the qualified immunity test, i.e., whether the right was clearly established at the time of the alleged violation.

Defendant claims that he is entitled to qualified immunity because a reasonable officer in his position, and following the orders of his superiors, would believe that his efforts to secure a non-compliant inmate following a riot were lawful. Defendant's reliance on orders from his superiors is unavailing. "Courts have widely held that a party's purported defense that he was 'just following orders' does not occup[y] a respected position in our jurisprudence." Peralta v. Dillard, 704 F.3d 1124, 1134 (9th Cir. 2013) (citations and internal quotation marks omitted). "Instead, officials have an obligation to follow the Constitution even in the midst of a contrary directive from a superior or in a policy." Id. (citation and internal quotation marks omitted); Dirks v. Grasso, 449 F. App'x 589, 592 (9th Cir.2011) ("[The defendants] cite no binding authority holding that following a superior's orders entitles officers to qualified immunity, and none exists."). In any event, there is nothing before the Court to suggest that Defendant's superiors ordered Defendant to ignore Plaintiff's complaints that the pavement was burning hot, or that they ordered him to require Plaintiff to kneel on the hot pavement for ninety minutes under threat of being shot.

Furthermore, this litigation is not directed at Defendant's actions to secure and restrain Plaintiff following the riot. The allegation at issue is Defendant's allegedly malicious decision to require Plaintiff to kneel on pavement for ninety minutes, despite knowing the pavement was burning hot. The Court concludes that a reasonable officer

could not believe such conduct was lawful in light of clearly established law regarding conditions of confinement.

Defendant is not entitled to qualified immunity on this claim.

## IV. CONCLUSION AND RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant Flores's motion to strike b GRANTED and that Plaintiff's surreply be stricken from the record. It is FURTHER RECOMMENDED that Defendant's motion for summary judgment be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with the findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   August 18, 2016           /s/ *Michael J. Seng*
                                                UNITED STATES MAGISTRATE JUDGE