UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIJON KINNEY,<br><br>           Plaintiff,<br><br>    v.<br><br>S. FLORES,<br><br>           Defendant. | CASE NO. 1:14-cv-00503-AWI-MJS (PC)<br><br>**ORDER REGARDING DISCOVERY**<br><br>**TWENTY (20) DAY DEADLINE FOR DEFENDANT'S PRODUCTION OF DOCUMENTS** |

Plaintiff is a state prisoner proceeding in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The action proceeds against Defendant Flores on Plaintiff's Eighth Amendment claims.

**I.    Procedural History**

On June 23, 2014, Plaintiff filed a first amended complaint. (ECF No. 9.) He alleged that, on August 14, 2012 a riot broke out in his recreation yard. Plaintiff was not involved. However, Plaintiff was one of several African-American inmates on a nearby basketball court who refused to prone out on the asphalt due to the heat. As a result, Plaintiff was forced by Defendant Flores to lie down/kneel down on the ground. The temperature was over 100 degrees and the ground was burning hot. Plaintiff was

required to kneel on the ground for over ninety minutes. He thereafter requested medical attention and Flores refused.

On July 1, 2014, the Court screened the complaint and found that it stated cognizable Eighth Amendment claims. (ECF No. 10.) Flores was served and answered on November 5, 2014. (ECF No. 18.) The Court issued a discovery and scheduling order, setting July 7, 2015 as the discovery cut-off and September 17, 2015 as the dispositive motion deadline. (ECF No. 20.) The discovery deadline later was extended to July 21, 2015 for the sole purpose of taking Plaintiff's deposition in Arizona. (ECF No. 30.)

On July 10, 2015, Plaintiff filed a "<u>Pitchess</u>" motion seeking materials from Defendant's personnel file. (ECF No. 31.) The motion was denied on the ground that <u>Pitchess</u> is inapplicable in this civil proceeding and, in any event, the discovery cut-off had expired. (ECF No. 32.)

On August 3, 2015, Plaintiff filed a motion for a ninety day extension of the discovery deadline. (ECF No. 33.) He claimed that he did not know how to file motions or discovery requests, he was without legal assistance from an attorney or "jail house lawyer" during the discovery period, and he is pro se and thus unfamiliar with the laws and rules of the federal courts. The motion was denied for failure to show good cause or that he had pursued discovery with the requisite diligence during the discovery period. (ECF No. 35.)

On September 16, 2016, Defendant moved to modify the dispositive motion deadline. (ECF No. 36.) The motion was granted and the deadline was extended to October 2, 2015.

On October 2, 2015, Defendant filed a motion for summary judgment. (ECF No. 37.) On January 15, 2016, after Plaintiff already had opposed the motion for summary judgment and filed his unauthorized surreply, Plaintiff moved "for a transcript of prior proceedings and all discovery of evidence." (ECF No. 46.) He sought a transcript of his

deposition, "material evidence," video footage, and photographs. He did not seek to stay proceedings on the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). The Court denied the motion on the ground that good cause was not presented. (ECF No. 49.)

On February 29, 2016, Plaintiff filed another discovery motion. (ECF No. 51.) This time, Plaintiff did seek additional time under Rule 56(d). He sought the following discovery: his own deposition transcript, the final dispositions of investigations performed by the California Department of Corrections and Rehabilitation and the Office of the Inspector General, video footage of the incident, and photographs taken by medical staff. Defendant filed no opposition. On May 27, 2016, the Court denied the motion, once again because Plaintiff failed to show he diligently pursued discovery. (ECF No. 56.)

Nevertheless, to facilitate the efficient resolution of discovery issues and allow summary judgment and/or trial to proceed upon the consideration of all relevant evidence, the Court ordered as follows:

1. A telephonic discovery dispute conference was set for June 21, 2016.
2. The parties were ordered to meet and confer prior to the conference to attempt to resolve disputes regarding Plaintiff's deposition transcript, photo evidence, and video evidence.
3. Defendant was ordered to provide the following documents to the Court for in camera review: any and all documents in Defendant's possession, custody, or subject to his control relating to the investigation of the August 14, 2012 incident by the California Department of Corrections and Rehabilitation and/or the Office of the Inspector General.
4. Defendant also was invited to submit a statement of objections to the release of such documents to Plaintiff and a draft protective order, if deemed necessary.

On June 23, 2016 Defendant filed objections to the order. (ECF No. 62.) On September 23, 2016, Defendant's motion for summary judgment was denied. (ECF No. 68.) On October 19, 2016, the District Judge ruled on Defendant's objections to the discovery order. (ECF No. 71.) The District Judge found good cause for reopening discovery for the limited purposes described above. He overruled Defendant's objections on procedural grounds.[1]

On November 29, 2016, the undersigned set the matter for a telephonic discovery dispute conference, ordered the parties to meet and confer regarding Plaintiff's access to photographs of his injuries, and ordered Defendant to submit the above-described documents for in camera review.

Defendant submitted the documents, videos, and audio recordings between January 3, 2017 and January 5, 2017. He also submitted objections to the release of said document to Plaintiff, a privilege log, and a proposed protective order (ECF Nos.92-93).

On January 11, 2017, counsel was appointed to represent Plaintiff. (ECF No. 96.)

The Court conducted it's in camera review of the documents and discussed the conclusions it drew therefrom with all parties on the record on January 13, 2017.

**II.   Legal Standard**

The Supreme Court has long noted that privileges are disfavored. Jaffee v. Redmond, 518 U.S. 1, 9 (1996). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir. 1988). Privileges are to be "strictly construed" because they "impede full and free discovery of the truth." Eureka Fin. Corp. v. Hartford Acc. and Indem. Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991). "If the privilege is

---

[1] Defendant objected that the disputed evidence was not relevant to the motion for summary judgment; the District Judge concluded it may be relevant for trial. Defendant objected that the evidence was confidential and privileged; the District Judge noted that Defendant had been ordered to present these arguments to the undersigned and did not do so. Accordingly, the District Judge declined to address them.

4

worth protecting, a litigant must be prepared to expend some time to justify the assertion of the privilege." Id.

In civil rights cases brought under section 1983, questions of privilege are resolved by federal law. Kerr v. U.S. District Court for the Northern District of California, 511 F.2d 192, 197 (9th Cir. 1975). "State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases." Kelly v. City of San Jose, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987).

Nevertheless, "[f]ederal common law recognizes a qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr, 511 F.2d at 198). The official information privilege ensures disclosure of discoverable information without compromising the state's interest in protecting the privacy of law enforcement officials and in ensuring the efficacy of its law enforcement system. Kelly, 114 F.R.D. at 662-63.

"To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." Sanchez, 936 F.2d at 1033-34. "In the context of civil rights suits against [corrections officials], this balancing approach should be 'moderately pre-weighted in favor of disclosure.'" Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 661).

The party invoking the privilege must at the outset make a "substantial threshold showing" by way of a declaration or affidavit from a responsible official with personal knowledge of the matters attested. Soto, 162 F.R.D. at 613. "The claiming official must 'have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced' and state with specificity the rationale of the claimed privilege." Kerr, 511 F.2d at 198 (citation omitted). The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official

has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made. Soto, 162 F.R.D. at 613. In addition, "[t]he asserting party, as in any case where a privilege is claimed, must sufficiently identify the documents so as to afford the requesting party an opportunity to challenge the assertion of privilege." Miller v. Panucci, 141 F.R.D.292, 300 (C.D. Cal. 1992).

## III. Discussion

Defendants' privilege log contains eight Office of Internal Affairs Investigation Reports and Exhibits thereto. The Exhibits include video footage and audio recordings. The Court has conducted an in camera review of these materials and has considered the materials under the legal standard set forth above. The Court has weighed the potential benefits of disclosure against the potential disadvantages, Sanchez, 936 F.2d at 1033–34, and concludes that, in the specific instances described below, the balance tips rather clearly in favor of disclosure. The Court is sensitive to Defendant's need to maintain institutional safety and security. Similarly, the Court appreciates the benefit to society and institutions within it of promoting thorough and accurate investigations. However, these records contain highly relevant information bearing directly on the incident at issue and potential liability therefore. Justice requires that the contents be made available to Plaintiff for use in identifying witnesses, and in questioning, and possibly impeaching, lay and expert witnesses at the trial of this case.

Given the foregoing, judicial preference for admitting competent, relevant evidence, and recognition that the balance is "moderately pre-weighted in favor of disclosure" in these cases, Soto, 162 F.R.D. at 613 (quoting Kelly, 114 F.R.D. at 661), the Court cannot justify withholding these records from Plaintiff on any basis proffered

by Defendants. Accordingly, Defendants will be ordered to produce to Plaintiff's counsel the documents and materials as identified below subject to the restrictions and protections described herein.

### A.    Office of Internal Affairs Investigation Reports

Defendants have submitted eight Office of Internal Affairs ("OIA") Investigation Reports concerning the incident at issue. Each report is 125 pages long and has as its subject a different officer involved in the incident. Aside from brief identifying information at the beginning of each report and a one sentence description of the nature of the inquiry as it relates to each officer, the reports appear to be nearly identical.

The Court concludes that the report pertaining to Defendant is clearly relevant to Plaintiff's claims and must be disclosed pursuant to a protective order. The seven remaining reports are cumulative and need not be disclosed.

The Court understands Defendant's argument that portions of Defendant's report pertaining to other officers or inmates should be redacted. Nonetheless, the Court concludes that these portions of the report identify potential witnesses and contain relevant information regarding the incident. Accordingly, only the following redactions are permitted:

• Redaction of introductory paragraph containing Defendant's personal information (full name, title, then-current location, date of birth, and hire date).

• Redaction of all first names, other than first initial.

• Redaction of review of inmate Butler's medical records (pages 13-14).

• Redaction of review of interview of Dr. Chokatos concerning inmate Butler (pages 73-76).

• Redaction of a paragraph of the interview of L. Quezada (page 83, final paragraph) regarding confidential informants.

• Redaction of review of inmate Fields' medical records (page 101).

7

• Redaction of review of inmate Venable's medical records (page 102).

**B.     Exhibits**

   **1.     Exhibit 1: Inmate Orientation Handbook**

This Exhibit does not contain confidential material. To the extent Plaintiff's counsel wishes to obtain it, it must be disclosed. Because it does not contain confidential material, it is not subject to any protective order.

   **2.     Exhibit 2: Title 15 Regulations**

This Exhibit does not contain confidential material. To the extent Plaintiff's counsel wishes to obtain it, it must be disclosed. Because it does not contain confidential material, it is not subject to any protective order.

   **3.     Exhibit 3: Crime/Incident Report**

This Exhibit constitutes confidential, privileged material containing sensitive safety and security information. Additionally, it has no apparent relevance to the instant litigation. Defendant need not disclose this Exhibit to Plaintiff or his counsel.

   **4.     Exhibit 4: Medical Reports of Injury**

This Exhibit contains medical reports relating to Plaintiff and other inmates who were allegedly injured in the incident. Information relating to participants in the riot is not relevant to Plaintiff's case and need not be disclosed. Information relating to inmates allegedly burned on the pavement is relevant and must be disclosed to Plaintiff's counsel.  With the exception of Plaintiff's own records, the records will be subject to the protective order.

   **5.     Exhibit 5: Health Care Services Request Forms**

This Exhibit contains health care services request forms written by Plaintiff and other inmates. Information relating to inmates allegedly burned on the pavement is relevant and must be disclosed to Plaintiff's counsel.  With the exception of Plaintiff's own records, the records will be subject to the protective order.

### 6. Exhibits 6-11: Internal Memoranda

These Exhibits are comprised of internal memoranda written by officers (other than Defendant) who participated in the incident. They contain the officers' first-hand observations and therefore are relevant to Plaintiff's claims. They must be disclosed to Plaintiff's counsel pursuant to the protective order. Defendant may redact first names (except first initials) and other personal identifying information.

### 7. Exhibit 12: Internal Memorandum from Warden

This Exhibit contains an internal memorandum from the Warden describing the incident, action and training taken as a result, and interactions with the Office of the Inspector General. It is relevant to Plaintiff's claims and must be disclosed pursuant to the protective order. Defendant may redact first names (with the exception of first initials) and other personal identifying information.

### 8. Exhibit 13: Emails between OIG and CDCR

These email communications between representatives of OIG and representatives of CDCR pertain to the incident and the response thereto. They are relevant to Plaintiff's claims and, while potentially prejudicial to Defendant, simply do not threaten privacy or security interests to a degree that would warrant their withholding. They must be released to Plaintiff's counsel pursuant to the protective order. First names (with the exception of first initials), email addresses, and other personal identifying information may be redacted.

### 9. Exhibit 14: Inmate Correspondence

This Exhibit contains correspondence between inmate Butler and the Prison Law Office. It has little to no relevance to Plaintiff's claims and need not be disclosed.

### 10. Exhibit 15: Photographs

This Exhibit contains photographs that relate primarily to the riot. They need not be disclosed.

#### 11.     Exhibit 16: Inmate Appeals and Staff Complaints

This Exhibit contains inmate appeals and staff complaints filed by the involved inmates, as well as the internal investigation of their complaints. These materials are relevant and must be released to Plaintiff's counsel pursuant to the protective order. First names (with the exception of first initials) and other personal identifying information may be redacted.

#### 12.     Exhibit 17: Surveillance Video Footage

Defendant submitted two discs with surveillance video footage to the Court for in camera review. The first is approximately fifteen seconds long and shows the riot itself. It was taken prior to the prone out order at issue in this case and does not contain relevant material. It need not be disclosed.

The second video is approximately two minutes long. It pans the yard prior to, during, and immediately after the riot. It appears to briefly pan the basketball court area as the inmates began to prone out. It is relevant and must be released to Plaintiff's counsel subject to the protective order.

#### 13.     Exhibit 18: Temperature Logs

This Exhibit contains records of the temperature in various prison locations on the day of the incident. It is relevant and must be released. It does not appear to contain confidential material and therefore is not subject to the protective order.

#### 14.     Exhibits 19, 54-56, and 68-69: Inmate Butler's Medical Records

These Exhibits contain inmate Butler's confidential health information. The privacy interests outweigh their relevancy, and they need not be released.

#### 15.     Exhibit 20: Photographs of Inmate Injuries

If Defendant has not already done so, he must release to Plaintiff photographs of Plaintiff's own injuries. These photographs are not subject to the protective order. Photographs of other inmates contained in this Exhibit must be released to Plaintiff's

counsel, subject to the protective order. Defendant may redact first names, with the exception of first initials.

### 16. Exhibits 21, 23, 25, 27, 29, 31, 85: Inmate Interviews

These Exhibits are audio recorded interviews with the involved inmates. Plaintiff's own interview (Exhibit 31) must be released to his counsel and is not subject to the protective order. The remaining interviews are summarized in Defendant's OIA Investigation Report. To the extent Plaintiff's counsel wishes to seek release of audio recorded interviews of other inmates, he must set forth a specific basis why disclosure is warranted.

### 17. Exhibits 22, 24, 26, 28, 30, 32, 86: Inmate Schematics

These Exhibits are comprised of yard schematics that were presented to inmates during the investigation, and on which inmates were asked to mark their location at the time of the incident. The schematic marked by Plaintiff (Exhibit 32) must be released to Plaintiff's counsel pursuant to the protective order. To the extent counsel wishes to seek release of schematics marked by other inmates, he must set forth a specific basis why disclosure is warranted.

### 18. Exhibits 33, 35, 36, 37, 41, 43, 45, 47, 51, 53, 57, 61, 63, 67, 70, 74, 76, 78, 81, 83, 87, 89, 95, 98: Interviews of Correctional Personnel

These Exhibits are audio recorded interviews with various correctional personnel involved in the incident or the response thereto. Defendant's interview (Exhibit 63) must be released to Plaintiff's counsel pursuant to the protective order. The remaining interviews are summarized in Defendant's OIA Investigation Report. To the extent Plaintiff wishes to seek release of audio recorded interviews of other personnel, he must set forth a specific basis why disclosure is warranted.

**19.     Exhibits 34, 40, 42, 46, 50, 52, 60, 62, 66, 73, 75, 77, 82, 84, 88, 90: Correctional Personnel's Schematics**

These Exhibits are comprised of yard schematics that were presented to personnel during the investigation, and on which personnel were asked to mark their location at the time of the incident. The schematic marked by Defendant (Exhibit 66) must be released to Plaintiff's counsel pursuant to the protective order. To the extent Plaintiff wishes to seek release of schematics marked by other personnel, he must set forth a specific basis why disclosure is warranted.

**20.     Exhibits 38, 39, 48, 49, 58, 59, 64, 65, 71, 72, 79, 80, 96, 97, 99, 100: Administrative Documents**

These exhibits contain administrative documents not relevant to this action. They need not be disclosed.

**21.     Exhibit 91: Fields Medical Records**

This Exhibit contains inmate Fields' confidential health information. The privacy interests inherent in the records outweigh their relevancy. They need not be released.

**22.     Exhibit 92: In Service Training Alarm Response Lesson Plan**

This Exhibit contains two non-consecutive pages of training materials that appear to largely relate to chain-of-command concerns during an emergency. It does not address the issue of requiring inmates to prone out during an emergency. It is not relevant to this action and need not be released.

**23.     Exhibit 93: Venable Medical Records**

This Exhibit contains inmate Venable's confidential health information. The privacy interests inherent in the records outweigh their relevancy. They need not be released.

### 24. Exhibit 94: Post Orders

This Exhibit contains Post Orders for the Facility C Lieutenant, the Facility C Yard/Dining Sergeant, and the Facility C Program Sergeant. As Defendant was not a lieutenant or sergeant, they are not relevant to this action and need not be released.

### C. Other: Report of Interview with Chief Warden Raythel Fischer

This report is not listed as an Exhibit to the Investigation Report and it is unclear whether it was considered during the investigation. In any event, it concerns discussions between Raythel and Warden Brazelton regarding when the Warden became aware of the affected inmates' alleged injuries. It has little relevance to Plaintiff's claims and need not be disclosed.

## IV. Protective Order

Defendants have requested a protective order prohibiting the dissemination of confidential materials to Plaintiff and others. A protective order is indeed warranted given the institutional concerns articulated by Defendants. Accordingly, the following protective order applies to the privileged materials described above. Defendants shall produce said materials and Plaintiff's counsel may review them and use them in litigating this matter subject to and in strictly in accordance with following terms and conditions:

1. The confidential documents may be submitted to the possession of the following persons:
    a. Counsel for Plaintiff in this action;
    b. Paralegal, stenographic, clerical, and secretarial personnel regularly employed by counsel for Plaintiff;
    c. Court personnel and stenographic reporters engaged in such proceedings as are incidental to the preparation for trial or trial of this action;

   d. Any outside expert or consultant retained by Plaintiff's counsel for purposes of this action; and

   e. Non-inmate witnesses to whom the materials need be disclosed as necessary for preparation for trial and trial of this case, provided that each witness shall be informed of and agree in writing to be bound by the terms of this order, and shall not, in any event, be permitted to take or retain copies of the material .

2. Plaintiff's counsel may share the confidential materials and their contents with Plaintiff. However, Plaintiff may not copy them or retain them or retain copies of them in his possession. Plaintiff may not discuss the content of the materials with any other inmate, nor may any other inmate review or have possession of the materials.

3. Upon final judgment or resolution of any appeal, Plaintiff's counsel shall return or destroy all such materials still in or subject to their possession or control, and shall provide Defendant's counsel with sworn declarations stating they have done so.

4. No confidential material obtained by Plaintiff or his counsel shall be disclosed except as is necessary to the litigation of this case, including if applicable its appeal, and for no other purpose,

5. Any violation of this Protective Order may be punishable as Contempt of Court and also may subject the violating party to litigation sanctions, including dispositive sanctions, in the Court's discretion;

6. Nothing in this Protective Order is intended to prevent officials or employees of the State of California, or other authorized government officials, from having access to confidential material to which they would have access in the normal course of their official duties.

7. The provisions of this Protective Order are without prejudice to the right of any party:

    a. To apply to the Court for a further protective order relating to this or any confidential material or relating to discovery in this litigation;

    b. To apply to the Court for an order removing the confidential material designation from any documents;

    c. To apply to the Court for an order modifying this Protective Order for good cause shown; or

    d. To object to a discovery request.

8. The provisions of this order shall remain in full force and effect until further order of this Court.

**V.    Further Discovery Disputes**

No further discovery motion may be filed without prior approval obtained in accordance with the following Telephonic Discovery Dispute Conference procedures.

    **A.    Requesting a Conference**

A party with a discovery dispute shall confer with the opposing party in a good faith effort to resolve the dispute without court action. If such effort fails, the moving party shall, prior to filing a notice of motion, contact Courtroom Deputy, Megan Lafata at mlafata@caed.uscourts.gov to request a pre-motion telephone conference with Magistrate Judge Seng. The request shall be deemed to include a professional representation by the requesting lawyer that a good faith effort to resolve the dispute took place but failed, and it shall advise the Court of dates and times in the next ten day period when all concerned parties can be available to confer regarding the dispute.

    **B.    Scheduling.**

The Court will issue a Minute Order advising counsel of the time and date of the telephone conference. The Court will provide the parties with the conference call number and access code for joining the scheduled telephonic conference.

### C. Briefing

Not later than four business hours before the scheduled conference, each party may submit a two page brief objectively and factually outlining the dispute, the party's position on it, and the reasons therefore to mjsorders@caed.uscourts.gov. The two pages shall be in at least twelve point type and include the name of the party and the date of submission. It shall contain nothing more. There shall be no attachments. There shall be no editorializing. Inclusion therein of adjectives or adverbs or any characterization of an opponent's motives, methods, character, past practices, or the like shall subject the author to sanctions.

### D. The Conference

At the conference, the Court will discuss the issue raised and announce its anticipated ruling on the dispute. If a party is dissatisfied with that ruling, it may seek permission to file a formal motion.

### E. Further Proceedings

If it is determined that motion papers and supporting memoranda are needed to satisfactorily resolve the dispute, the undersigned shall approve the filing of a written motion.

## VI. Order

Based on the foregoing, it is HEREBY ORDERED that:

1. Within twenty days of this order, the following items must be produced to Plaintiff's counsel and are not subject to the protective order: Exhibits 1, 2, 4 (in relevant part as described above), 5 (in relevant part, as described above), 18, and 20 (in relevant part as described above). These items may be shared directly with Plaintiff without limitation.

2. Within twenty days of this order, the following items must be produced to Plaintiff's counsel, subject to the protective order: Defendant's OIA Investigation Report, and Exhibits 4 and 5 (in relevant part, as described

above), 6-13, 16 (in relevant part, as described above), 17 (in relevant part, as described above), 20 (in relevant part as discussed above) 31, 32, 63, and 66. These items may be shared with Plaintiff subject to the protective order.

3. Defendant may redact the following information from his Investigation Report:

- Redaction of introductory paragraph containing Defendant's personal information (full name, title, then-current location, date of birth, and hire date).
- Redaction of all first names, other than first initial.
- Redaction of review of inmate Butler's medical records (pages 13-14).
- Redaction of review of interview of Dr. Chokatos concerning inmate Butler (pages 73-76).
- Redaction of a paragraph of the interview of L. Quezada (page 83, final paragraph) regarding confidential informants.
- Redaction of review of inmate Fields' medical records (page 101).
- Redaction of review of inmate Venable's medical records (page 102).

4. Defendant may redact the following information from other materials subject to the protective order:

- Redaction of all first names, other than first initial.
- Redaction of all email addresses.
- Redaction of other personal identifying information.

5. If Defendant believes additional redactions are necessary to ensure privacy and security, he may request same within ten days of the date of this order.

6. The remaining documents submitted for in camera review need not be disclosed to Plaintiff or his counsel.

IT IS SO ORDERED.

Dated:   January 16, 2017            /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE